UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAULA DEONARINE,<br><br>                        Plaintiff,<br><br>              -against-<br><br>JPMORGAN CHASE BANK, N.A.; SYNCHRONY BANK; AMERICAN EAGLE OUTFITTERS, INC.; PAYPAL, INC.; BARCLAYS BANK DELAWARE; THE GAP, INC.; TRANS UNION LLC a/k/a TRANSUNION; EXPERIAN INFORMATION SOLUTIONS, INC.; and EQUIFAX INFORMATION SERVICES LLC,<br><br>                      Defendants. | Civil Action<br>Case No.: 1:24-cv-07152<br><br>**COMPLAINT** |

Plaintiff Paula Deonarine ("Plaintiff"), by and through her attorneys, Petroff Amshen LLP, as and for her complaint against the defendants named herein (collectively, "Defendants"), hereby alleges the following upon personal knowledge, review of public record, and/or otherwise upon information and belief:

1.      Plaintiff brings this action for damages arising under the Fair Credit Reporting Act ("FCRA") (15 U.S.C. § 1681, *et seq.*) and its implementing Regulation V (12 C.F.R. Part 1022), Fair Debt Collection Practices Act ("FDCPA") and its implementing Regulation F (15 U.S.C § 1692, *et seq.* and 12 C.F.R § 1006.1, *et seq.*), and New York General Business Law ("GBL") which codifies New York's Fair Credit Reporting Act (the "NYFCRA") (GBL § 374, *et seq.*), resulting from Defendants' willful and ongoing violations of consumer credit protection laws, including failure to investigate and correct inaccurate credit reporting resulting from identity theft, and unlawful attempts to collect on a fraudulent debt.

2.      Unbeknownst to Plaintiff, an identity thief stole her personal information and used this information to gain access to several of Plaintiff's credit accounts.  By the time Plaintiff discovered she was a victim of identity theft, the thief had already used Plaintiff's accounts to make fraudulent, illegal, and unauthorized purchases totaling more than $85,000.00.

3.      Although Plaintiff took every possible measure to report the fraud and restore her good credit, the Defendants failed and refused to investigate or correct the errors, and continued furnishing and reporting inaccurate information, and attributing the fraudulent charges to Plaintiff.

4.      Congress enacted the FCRA "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ."  15 U.S.C. § 1681.

5.      Thus, because "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers," Congress determined that the protections of the FCRA were necessary "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy."  *See id.*

6.      The FCRA also imposes a duty upon the furnishers of information to consumer reporting agencies to provide accurate information relating to consumers, and to correct and update any consumer information the furnisher determines is incomplete or inaccurate.  *See* 15 U.S.C. § 1681s-2.

7.      Despite Defendants' "grave responsibilities" to ensure the accuracy and proper utilization of Plaintiff's credit information, Defendants ignored Plaintiff's pleas for help and

instead further perpetuated the identity theft, causing Plaintiff to suffer increased and ongoing credit damage, adverse action, and other damages.

## PARTIES

8.      Plaintiff is an individual and resident of the State of New York, County of Queens, residing at 8627 124th Street, Richmond Hill, New York 11418.

9.      Defendant JPMorgan Chase Bank, N.A. ("Chase") is a national banking association organized and existing under the laws of the United States of America, with its principal place of business at 1111 Polaris Parkway, Columbus, Ohio 43240.  Chase is a wholly-owned subsidiary of JPMorgan Chase & Co., with a registered agent for service in New York c/o CT Corporation System, 28 Liberty Street, New York, New York 10005.

10.     Defendant Synchrony Bank ("Synchrony") is a federally chartered savings bank existing under the laws of the United States of America, with its principal place of business at 170 W Election Road, Suite 125, Draper, Utah 84020, and registered agent for service in New York c/o CT Corporation System, 28 Liberty Street, New York, New York 10005.  Synchrony is a wholly-owned subsidiary of Synchrony Financial.

11.     Defendant American Eagle Outfitters, Inc. ("American Eagle") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 77 Hot Metal Street, Pittsburgh, Pennsylvania 15203, and registered agent for service in New York c/o CT Corporation System, 28 Liberty Street, New York, New York 10005.

12.     Defendant PayPal, Inc. ("PayPal") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 2211 North First Street, c/o Corporate Legal Department, San Jose, California 95131, and registered agent for service in New York c/o CT Corporation System, 28 Liberty Street, New York, New York 10005.

13.     Defendant Barclays Bank Delaware ("Barclays") is a state-chartered bank organized under the laws of the State of Delaware, with its principal place of business at 125 South West Street, Wilmington, Delaware 19801, and New York headquarters at 200 Park Avenue, 4th Floor, New York, New York 10166.

14.     Defendant The Gap, Inc. ("Gap Inc.") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 2 Folsom Street, San Francisco, California 94105, and registered agent for service in New York c/o CT Corporation System, 28 Liberty Street, New York, New York 10005.

15.     Defendant Trans Union LLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 555 West Adams Street, Chicago, Illinois 6066, and registered agent for service in New York c/o The Prentice-Hall Corporation System, Inc., 80 State Street, Albany, New York 12207-2543.  The company is also known as "TransUnion", and shall be referred to as such herein.  TransUnion is one of the three national credit reporting agencies ("CRAs") recognized by the Federal Trade Commission ("FTC").

16.     Defendant Experian Information Solutions, Inc. ("Experian") is a corporation organized under the laws of the State of Ohio, with its principal place of business at 475 Anton Boulevard, Costa Mesa, California 92626, and registered agent for service in New York c/o CT Corporation System, 28 Liberty Street, New York, New York 10005.  Experian is a wholly owned subsidiary of Experian Holdings, Inc.  Experian is one of the three national CRAs recognized by the FTC.

17.     Defendant Equifax Information Services LLC ("Equifax") is a limited liability company organized under the laws of the State of Georgia, with its principal place of business at

1550 Peachtree Street NW, Atlanta, Georgia 30309, and registered agent for service in New York c/o Corporation Service Company, 80 State Street, Albany, New York 12207-2543. Equifax is a wholly owned subsidiary of Equifax Inc. Equifax is one of the three national CRAs recognized by the FTC.[1]

## JURISDICTION

18.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiff's claims substantially arise under federal law.

19.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to Plaintiff's claims occurred in this district, and Plaintiff resides in this district.

## STATEMENT OF FACTS

**A.      Plaintiff's Compromised Accounts.**

20.     Chase is the issuer of Plaintiff's Chase Ultimate Rewards® Card (the "Chase Card"), ending in -4325. Upon information and belief, in credit reports supplied to Plaintiff by the Defendant CRAs, the Chase Card is referred to as "JPMCB CARD."

21.     Upon information and belief, Chase is a furnisher of information to the Defendant CRAs regarding Plaintiff's Chase Card account.

22.     Synchrony is the issuer of Plaintiff's American Eagle RealRewards® Visa® Card (the "Synchrony AEO Visa"), ending in -0518. American Eagle aggressively markets and promotes company-branded credit card programs to consumers, including the American Eagle-branded Synchrony AEO Visa, which offer company-related "benefits" to cardholders. Upon

---

[1] TransUnion, Experian, and Equifax shall be referred to collectively herein as the "Defendant CRAs."

information and belief, in credit reports supplied to Plaintiff by the Defendant CRAs, the Synchrony AEO Visa is referred to as "SYNCB/AMEG D."

23.     Both Synchrony and American Eagle are parties to the Synchrony AEO Visa account agreement.  Upon information and belief, as parties to the Synchrony AEO Visa account agreement, Synchrony and American Eagle record and maintain information regarding Plaintiff and her Synchrony AEO Visa account, and furnish this information to the Defendant CRAs.

24.     Upon information and belief, Synchrony is also the lender on Plaintiff's PayPal Credit account ("Synchrony PayPal Credit"), which PayPal markets as a "digital, reusable credit line."  PayPal advertises that users can "[c]heck out confidently and securely with PayPal Credit," by promoting features like "purchase protection" and "payment security."   Upon further information and belief, in credit reports supplied to Plaintiff by the Defendant CRAs, Synchrony PayPal Credit is referred to as "SYNCB/PPC."

25.     Both Synchrony and PayPal are parties to the Synchrony PayPal Credit agreement. Upon information and belief, as parties to the Synchrony PayPal Credit agreement, Synchrony and PayPal record and maintain information regarding Plaintiff and her Synchrony PayPal Credit account, and furnish this information to the Defendant CRAs.

26.     Barclays is the issuer of Plaintiff's Navyist Rewards Mastercard® (the "Barclays Old Navy Card"), ending in -0213.  Gap Inc. is the owner and parent company of multiple apparel brands including Old Navy, Gap, Banana Republic, and Athleta.  Gap Inc. and its apparel brands aggressively market and promote company-branded credit card programs to consumers, including the Old Navy-branded Navyist Rewards Mastercard®, which offer company-related "benefits" to cardholders.  Upon information and belief, in credit reports supplied to Plaintiff by the Defendant CRAs, the Barclays Old Navy Card is referred to as "BRCLYOLDNAVY."

27.      Both Barclays and Gap Inc. are parties to the Barclays Old Navy Card agreement. Upon information and belief, as parties to the Barclays Old Navy Card agreement, Barclays and Gap Inc. record and maintain information regarding Plaintiff and her Barclays Old Navy Card, and furnish this information to the Defendant CRAs.[2]

**B.      An Unknown Thief Steals Plaintiff's Identity and Uses the Compromised Accounts to Make Fraudulent Purchases and Transactions Totaling More Than $85,000.00.**

28.      In or about March 2023, Plaintiff was notified of a returned payment on her Chase Card, which prompted her to review her bank and credit accounts to determine the source of the issue.

29.      Upon review, Plaintiff discovered that large amounts of fraudulent activity had occurred on the Compromised Accounts starting in February 2023 (the month prior), resulting in severely overdrawn credit and unauthorized transactions totaling more than $85,000.00.

30.      Plaintiff also discovered multiple reversed payment transactions on the Compromised Accounts.

31.      Plaintiff did not authorize or benefit from these transactions, nor did she authorize or allow any other individual to use or access the Compromised Accounts or credit cards.

32.      Plaintiff does not know who accessed or obtained her account information, or when and how the thief was able to access her accounts.

33.      In less than one month, the thief used Plaintiff's Compromised Accounts to make fraudulent purchases of at least $85,561.46, including: (i) $41,529.27 on the Chase Card; (ii)

---

[2] Chase, Synchrony, American Eagle, PayPal, Barclays, and Gap Inc. shall be referred to collectively herein as the "Furnisher Defendants."  Additionally, Plaintiff's Chase Card, Synchrony AEO Visa, Synchrony PayPal Credit, and Barclays Old Navy Card shall be referred to collectively herein as the "Compromised Accounts."

$24,523.19 on the Synchrony AEO Visa; (iii) $7,366.00 on the Synchrony PayPal Credit; and (iv) $12,143.00 on the Barclays Old Navy Card.

34.     Additionally, each of the Compromised Accounts was overdrawn well beyond its credit limit.

35.     Upon information and belief, Plaintiff never exceeded her credit limit with any of her creditors.

**C.     Failure to Investigate or Resolve Plaintiff's Fraud Dispute Claims.**

36.     Despite the unusual and suspicious transaction and payment activity on the Compromised Accounts between February and March of 2023, including overdrawing the accounts well beyond their credit limits, the Furnisher Defendants failed to identify the fraud or suspicious activity, or to take any preventive measures to mitigate any further fraudulent activity on the Compromised Accounts.

37.     The Furnisher Defendants further failed to notify Plaintiff of any suspicious activity occurring on the Compromised Accounts.

38.     Upon discovering the fraudulent activity, Plaintiff immediately ceased using the Compromised Accounts and contacted the Furnisher Defendants to dispute the fraudulent charges.

39.     In the "Fraud & Security" section of the "Frequently Asked Questions" on Chase's website relating to its credit cards, Chase advises that with its "Zero Liability Protection you won't be held responsible for unauthorized charges made with your card or account information." *See* https://www.chase.com/personal/credit-cards/card-resource-center/fraud-security.

40.     However, when Plaintiff contacted Chase to dispute the fraudulent charges on her Chase Card, it failed and refused to investigate or remedy the unauthorized transactions.  Chase

then continued furnishing information to the Defendant CRAs attributing responsibility for the fraudulent debt to Plaintiff.

41.    Likewise, Section III of the Synchrony AEO Visa account agreement regarding unauthorized use states: "If your card is lost, stolen or used without your consent, call us immediately at 1-866-913-6765.  You will not be liable for unauthorized use on your account, but you will be responsible for all use by anyone you give your card to or allow to use your account. . . .  In addition, Visa's Zero Liability policy applies to all transactions not made in an AE or Aerie store or on ae.com or aerie.com."

*See* https://apply.syf.com/cs/groups/public/documents/et_tcdoc/e046677.pdf.

42.    However, when Plaintiff contacted Synchrony and American Eagle to dispute the fraudulent charges on her Synchrony AEO Visa account, they failed and refused to investigate or remedy the unauthorized transactions.   They then continued furnishing information to the Defendant CRAs attributing responsibility for the fraudulent debt to Plaintiff.

43.    In the "Frequently Asked Questions" on PayPal's website relating to protection from liability for unauthorized charges, PayPal advises that "[y]ou will not be liable for unauthorized use on your account, but you will be responsible for all use by anyone you allow to use your account."  *See* https://www.paypal.com/us/campaign/paypal-credit/faq.

44.    However, when Plaintiff contacted Synchrony and PayPal to dispute the fraudulent charges on her Synchrony PayPal Credit account, they failed and refused to investigate or remedy the unauthorized transactions.  They then continued furnishing information to the Defendant CRAs attributing responsibility for the fraudulent debt to Plaintiff.

45.    The Barclays Old Navy Card agreement states: "You will not be liable for unauthorized use of the Account; however, you must identify for us the charges that were not made

by you or someone authorized by you and through which you received no benefit." *See* https://cards.barclaycardus.com/banking/cardmember-agreement/gap-cobrand/standard-credit-agreement/.

46.    However, when Plaintiff contacted Barclays and Gap Inc. to dispute the fraudulent charges on her Synchrony PayPal Credit account, they failed and refused to investigate or remedy the unauthorized transactions.  They then continued furnishing information to the Defendant CRAs attributing responsibility for the fraudulent debt to Plaintiff.

47.    When Plaintiff's attempts to directly dispute the fraudulent charges with the Furnisher Defendants failed, Plaintiff had to retain the services of a credit repair agency to assist in remedying the already significant and ongoing damage to her credit and finances.

48.    With the help of the credit repair agency, Plaintiff learned that she could report the identity theft and fraudulent account use to authorities including the police and FTC, and also dispute the fraudulent debt reflected in her credit reports directly to the Defendant CRAs. Accordingly, Plaintiff filed a police report regarding the fraud with the New York City Police Department, and an identity theft report with the FTC.

49.    On or about April 29, 2024, Plaintiff mailed a written notice of dispute to each of the Defendant CRAs (the "Notice of Dispute"), advising that she was the victim of identity theft, and providing information regarding the fraudulent transactions and inaccurate credit reporting associated with the fraudulent debt.  A true and correct copy of the Notice of Dispute, with proof of mailing/delivery and without enclosures, is annexed hereto as **Exhibit A**.

50.    In connection with the Notice of Dispute, Plaintiff provided her name, address, date of birth, social security number, and all necessary information to identify the Compromised Accounts and items in error; and enclosed copies of Plaintiff's identity theft report, proof of

address, and personal identification.  *See* Ex. A.  A true and correct copy of the identity theft report Plaintiff filed with the FTC is annexed hereto as **Exhibit B**.

51.    Plaintiff specified the items in dispute as follows:

a.    Multiple fraudulent transactions and bounced payments on credit cards in February and March 2023;

b.    Several fraudulent PayPal transactions and bounced payments that started in February 2023;

c.    Fraudulent charges of $41,529.27 on the Chase Card account;

d.    Fraudulent charges of $24,532.19 on the Synchrony AEO Visa account; and

e.    Fraudulent charges of $12,143 on the Barclays Old Navy Card account.

*See* Ex. A.

52.    Although the Notice of Dispute requested an investigation and corrections to Plaintiff's credit report, along with a written response and documentation detailing the outcome of the investigation, the Defendant CRAs failed to undertake a timely or proper investigation into the identity theft and fraudulent transactions, and did not provide the requested response.

53.    Upon information and belief, the Defendant CRAs further failed to notify the Furnisher Defendants of their receipt of the Notice of Dispute, and/or the Furnisher Defendants did receive the Notice of Dispute, but failed to investigate or correct the completeness and accuracy of the disputed information.

54.    Upon information and belief, to date, the Furnisher Defendants have continued furnishing inaccurate information to the Defendant CRAs regarding Plaintiff's Compromised Accounts, and the Defendant CRAs have continued inaccurately reporting the fraudulent debts as delinquent and attributable to Plaintiff, causing significant damage to Plaintiff's credit and finances.

**D.    Illegal Attempts to Collect on Fraudulent Debt.**

55.    Although Plaintiff disputed the fraudulent charges with the Furnisher Defendants and notified them that she was the victim of identity theft, the Furnisher Defendants have refused to honor their own agreements stating that account holders will not be liable for unauthorized use of the Compromised Accounts, and have continued illegal collection activities on the fraudulent debts.

56.    Specifically, on November 9, 2023, Synchrony filed an action against Plaintiff in Queens County Civil Court under Index No. CV-020050-23/QU, seeking to collect an alleged "balance due" of $40,412.09 on Plaintiff's Synchrony AEO Visa (the "First Synchrony Action").



*WebCivil Local - Case Detail*

| | |
|---|---|
| Court: | **Queens County Civil Court** |
| Index Number: | **CV-020050-23/QU** |
| Case Name: | **SYNCHRONY BANK vs. DEONARINE, PAULA** |
| Case Type: | **Civil** |
| Classification: | **Consumer Credit** |
| Filing Date: | **11/09/2023** |
| Disposition Date: | |
| Calendar Number: | **S-23-QU-025740** |
| Jury Demand: | **No** |
| Judge Name: | |

57.    Upon information and belief, the full amount Synchrony seeks to collect in the First Synchrony Action is attributable to the fraudulent debt Plaintiff has repeatedly disputed, and for which Plaintiff should not bear any liability.  Upon further information and belief, the alleged balance of $40,412.09 also includes thousands of dollars of improper fees, interest, and other charges added to the fraudulent debt, and for which Plaintiff is not responsible.

58.    In light of the foregoing, Plaintiff submitted an additional dispute and fraud claim to Synchrony's attorneys in the First Synchrony Action.  Although Synchrony's attorneys acknowledged receipt of Plaintiff's fraud claim nearly eight (8) months ago, collection activities

have continued, and the First Synchrony Action remains pending – with a pretrial conference scheduled for November 26, 2024.  Copies of the NY eCourts WebCivil Local Case Detail and Appearance Detail for the First Synchrony Action, and letter from Selip & Stylianou, LLP dated February 29, 2024, are annexed collectively hereto as **Exhibit C**.

59.    On December 7, 2023, Synchrony filed a <u>second</u> action against Plaintiff in Queens County Civil Court under Index No. CV-022641-23/QU (the "Second Synchrony Action").  Upon information and belief, in the Second Synchrony Action, Synchrony seeks to collect a fraudulent debt of $7,366.00 on Plaintiff's Synchrony PayPal Credit account, as reflected in Plaintiff's credit reports.  Copies of the NY eCourts Local Case Detail and Appearance Detail for the Second Synchrony Action are annexed collectively hereto as **Exhibit D**.  Upon further information and belief, Synchrony also seeks to collect additional improper fees, interest, and other charges added to the fraudulent debt, and for which Plaintiff is not responsible.



### WebCivil Local - Case Detail

| | |
|---|---|
| Court: | **Queens County Civil Court** |
| Index Number: | **CV-022641-23/QU** |
| Case Name: | **Synchrony Bank vs. Deonarine, Paula** |
| Case Type: | **Civil** |
| Classification: | **Consumer Credit** |
| Filing Date: | **12/07/2023** |
| Disposition Date: | |
| Calendar Number: | **S-23-QU-025742** |
| Jury Demand: | **No** |
| Judge Name: | |

60.    Given that Synchrony is represented by the same attorneys in both actions, upon information and belief, Synchrony and its attorneys have had notice of Plaintiff's additional dispute and fraud claim since in or about February 2024.  *See* Exs. C-D.  Nonetheless, collection

activities have continued, and the Second Synchrony Action remains pending – also with a pretrial conference scheduled for November 26, 2024.  *See* Ex. D.

61.    On July 12, 2024, Barclays filed an action against Plaintiff in Queens County Civil Court under Index No. CV-016692-24/QU, seeking to collect the sum of $18,869.34 allegedly owed on Plaintiff's Barclays Old Navy Card account (the "Barclays Action").  Copies of the NY eCourts WebCivil Local Case Detail, and Summons and Complaint in the Barclays Action are annexed collectively hereto as **Exhibit E**.



### *WebCivil Local - Case Detail*

| | |
|---|---|
| Court: | **Queens County Civil Court** |
| Index Number: | **CV-016692-24/QU** |
| Case Name: | **BARCLAYS BANK DELAWARE vs. DEONARINE, PAULA** |
| Case Type: | **Civil** |
| Classification: | **Consumer Credit** |
| Filing Date: | **07/12/2024** |
| Disposition Date: | |
| Calendar Number: | |
| Jury Demand: | **No** |
| Judge Name: | |

62.    Upon information and belief, the full amount Barclays seeks to collect in the Barclays Action is attributable to the fraudulent debt Plaintiff has repeatedly disputed, and for which Plaintiff should not bear any liability.  Upon further information and belief, the alleged amount owed also includes improper fees, interest, and other charges added to the fraudulent debt, and for which Plaintiff is not responsible.

63.    Although Barclays is or should be aware that Plaintiff has disputed the debt on the Barclays Old Navy Card as the result of identity theft, upon information and belief, collection activities have continued, and the Barclays Action remains active and pending.  *See* Ex. E.

## VIOLATIONS OF THE FCRA
### (15 U.S.C. § 1681, *et seq.*)

64.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

65.     Plaintiff is a "consumer" as defined by the FCRA.  *See* 15 U.S.C. § 1681a(c).

66.     The Furnisher Defendants are "furnishers" of information to consumer reporting agencies, with a duty to fulfill the statutory responsibilities enumerated under 15 U.S.C. § 1681s-2, including providing accurate information relating to consumers.

67.     Each of the Furnisher Defendants is also a "person" as defined by the FCRA.  *See* 15 U.S.C. § 1681a(b).

68.     Subpart E of Regulation V, the FCRA's implementing regulation, applies to furnishers of information, including the Furnisher Defendants.  *See* 12 C.F.R. §§ 1022.1, 1022.40.

69.     Each of the Defendant CRAs is a "consumer reporting agency" as defined by the FCRA.  *See* 15 U.S.C. § 1681a(f).

70.     The Defendant CRAs each individually qualify as a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis," as defined by the FCRA. *See* 15 U.S.C. §1681a(p).

## COUNT I
### Willful Reporting of Inaccurate Information to Consumer Reporting Agencies
### (15 U.S.C. §§ 1681s-2, 1681n)
#### *AS TO THE FURNISHER DEFENDANTS*

71.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

72.     The FCRA prohibits furnishers from reporting information to a CRA "with actual knowledge of errors" and "after notice and confirmation of errors."  *See* 15 U.S.C. § 1681s-2(a)(1).

73.    Specifically, "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." *See* 15 U.S.C. § 1681s-2(a)(1)(A).  "The term 'reasonable cause to believe that the information is inaccurate' means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information." 15 U.S.C. § 1681s-2(a)(1)(D).

74.    Regulation V provides that "[e]ach furnisher must establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnishes to a consumer reporting agency," and "review its policies and procedures required by this section periodically and update them as necessary to ensure their continued effectiveness." *See* 12 C.F.R. § 1022.42.

75.    Regulation V defines "accuracy" as:

[I]nformation that a furnisher provides to a consumer reporting agency about an account or other relationship with the consumer [that] correctly: (1) [r]eflects the terms of and liability for the account or other relationship; (2) [r]eflects the consumer's performance and other conduct with respect to the account or other relationship; and (3) [i]dentifies the appropriate consumer.

12 C.F.R. § 1022.41(a).

76.    Additionally, "[a] person shall not furnish information relating to a consumer to any consumer reporting agency if -- (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and (ii) the information is, in fact, inaccurate." *See* 15 U.S.C. § 1681s-2(a)(1)(B).

77.    "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish

the information to any consumer reporting agency without notice that such information is disputed by the consumer." 15 U.S.C. § 1681s-2(a)(3).

78.     Upon receipt of notice of a dispute regarding the completeness or accuracy of information provided to a CRA under 15 U.S.C. § 1681i(a)(2), a furnisher of the disputed information must conduct a timely investigation and correct and discontinue any inaccurate reporting.  *See* 15 U.S.C. § 1681s-2(b).

79.     A furnisher who receives an identity theft report from a consumer is also prohibited from furnishing information to a CRA that is the result of such identity theft.  *See* 15 U.S.C. § 1681s-2(a)(6)(B).

80.     Plaintiff disputed the fraudulent charges directly to the Furnisher Defendants, and in the Notice of Dispute sent to the Defendant CRAs.  Plaintiff also filed an identity theft report with the FTC, which was included with the Notice of Dispute.

81.     Upon information and belief, the Furnisher Defendants each received notice of Plaintiff's Notice of Dispute regarding the accuracy of information furnished to the Defendant CRAs concerning her Compromised Accounts.  Upon further information and belief, the Furnisher Defendants also each received the identity theft report Plaintiff filed with the FTC and included with the Notice of Dispute.

82.     The Furnisher Defendants failed to review information provided by Plaintiff in connection with the Notice of Dispute, and failed to contact Plaintiff for any additional information.  The Furnisher Defendants also deliberately failed and refused to conduct a proper or timely investigation of Plaintiff's dispute, or to correct the disputed information.

83.     The Furnisher Defendants reported inaccurate account information regarding Plaintiff's Compromised Accounts to the Defendant CRAs, without notice that the information

was disputed, which was then incorporated into Plaintiff's credit reports issued by the Defendant CRAs. The Furnisher Defendants also improperly furnished information to the Defendant CRAs that was the result of identity theft.

84. The inaccurate information included: (i) attributing the debt and responsibility for the fraudulent charges to Plaintiff; (ii) misrepresenting the account balances by including the disputed, fraudulent charges, and the related improper fees and interest; and (iv) reporting the accounts as past due as a result of the disputed charges.

85. The Furnisher Defendants have continued inaccurately reporting information to the Defendant CRAs regarding Plaintiff's Compromised Accounts, including information resulting from the identity theft, in violation of 15 U.S.C. § 1681s-2.

86. The Furnisher Defendants' deliberate and ongoing furnishing of inaccurate and disputed information regarding Plaintiff's accounts has caused Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

87. As a result of the Furnisher Defendants' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681n, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs, to defend herself in multiple civil cases that were illegally, unjustifiably, and without cause filed by the Furnisher Defendants; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred in connection with this action.

<u>COUNT II</u>
**Negligent Reporting of Inaccurate Information to Consumer Reporting Agencies**
**(15 U.S.C. §§ 1681s-2, 1681o)**
*AS TO THE FURNISHER DEFENDANTS*

88.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

89.     Upon information and belief, each of the Furnisher Defendants – either directly or acting through an agent – furnished inaccurate information regarding Plaintiff's Compromised Accounts to the Defendant CRAs, which was incorporated into Plaintiff's credit file and credit reports.

90.     As parties to the applicable account agreements, and compilers and furnishers of information concerning the Compromised Accounts, each of the Furnisher Defendants had a duty to ensure Plaintiff's account history and information was accurately recorded and maintained, and to ensure the accuracy of any such information furnished to the Defendant CRAs.

91.     Upon information and belief, after receiving Plaintiff's Notice of Dispute regarding the identity theft and Compromised Accounts, the Furnisher Defendants thereafter negligently failed and refused to conduct any required investigation or to correct the disputed information, and have continued inaccurately furnishing information to the Defendant CRAs regarding the Compromised Accounts, including falsely representing that the accounts are delinquent, in violation of 15 U.S.C. § 1681s-2(a)(2) and 1681s-2(a)(8).

92.     The Furnisher Defendants have further negligently persisted in reporting inaccurate information to the Defendant CRAs without providing notice that Plaintiff has disputed such information, in violation of 15 U.S.C. § 1681s-2(3).

93.     The Furnisher Defendants' negligent and ongoing furnishing of inaccurate and disputed information regarding Plaintiff's accounts has caused Plaintiff to suffer damages

including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

94.    As a result of the Furnisher Defendants' negligent conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681o, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs, to defend herself in multiple civil cases that were illegally, unjustifiably, and without cause filed by the Furnisher Defendants; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred in connection with this action.

## COUNT III
### Willful Failure to Block Information Resulting from Identity Theft
### (15 U.S.C. §§ 1681c-2, 1681n)
#### *AS TO THE DEFENDANT CRAS*

95.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

96.    The FCRA requires CRAs to block the reporting of information resulting from identity theft when notified by the consumer:

> [A] consumer reporting agency shall block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt by such agency of-- (1) appropriate proof of the identity of the consumer; (2) a copy of an identity theft report; (3) the identification of such information by the consumer; and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a).

97.    CRAs are further required to notify the furnisher of such information "(1) that the information may be a result of identity theft; (2) that an identity theft report has been filed; (3) that

a block has been requested under this section; and (4) of the effective dates of the block." 15 U.S.C. § 1681c-2(b).

98. If a CRA declines to block, or rescinds a block, of information resulting from identity theft, it must promptly notify the consumer "in the same manner as consumers are notified of the reinsertion of information under section 1681i(a)(5)(B) of this title." *See* 15 U.S.C. § 1681c-2(c).

99. On April 29, 2024, Plaintiff mailed copies of the Notice of Dispute addressed to the Defendant CRAs, via certified mail. *See* Ex. A. USPS Tracking for the Notice of Dispute confirms each copy was delivered to the Defendant CRAs. *See id.*

100. The Notice of Dispute included all information and documentation required for an identity theft block under 15 U.S.C. § 1681c-2(a). *See* Ex. A.

101. Accordingly, within four (4) business days of receipt of the Notice of Dispute, each of the Defendant CRAs was obligated and required to block the reporting of information in Plaintiff's file resulting from the identity theft.

102. Upon information and belief, the Defendant CRAs deliberately failed to timely implement the required block pursuant to 15 U.S.C. § 1681c-2(a).

103. Upon information and belief, the Defendant CRAs further willfully declined to block the information and/or rescinded the block without authority or investigation, and without notifying Plaintiff, in violation of 15 U.S.C. § 1681c-2(c).

104. The Defendant CRAs' willful failure to block the reporting of information in Plaintiff's file resulting from identity theft has caused Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other

costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

105.    As a result of the Defendant CRAs' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681n, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs, to defend herself in multiple civil cases that were illegally, unjustifiably, and without cause filed by the Furnisher Defendants; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred in connection with this action.

<u>COUNT IV</u>
**Negligent Failure to Block Information Resulting from Identity Theft**
**(15 U.S.C. §§ 1681c-2, 1681o)**
*AS TO THE DEFENDANT CRAS*

106.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

107.    Upon receipt of the Notice of Dispute, each of the Defendant CRAs was obligated and required to block the reporting of information in Plaintiff's credit file resulting from the identity theft.

108.    Upon information and belief, the Defendant CRAs negligently failed to timely implement the required block pursuant to 15 U.S.C. § 1681c-2(a).

109.    Upon information and belief, the Defendant CRAs further negligently declined to block the information and/or rescinded the block without authority or investigation, and without notifying Plaintiff, in violation of 15 U.S.C. § 1681c-2(c).

110.    The Defendant CRAs' negligent failure to block the reporting of information in Plaintiff's file resulting from identity theft has caused Plaintiff to suffer damages including loss

and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

111.    As a result of the Defendant CRAs' negligent conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681o, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs, to defend herself in multiple civil cases that were illegally, unjustifiably, and without cause filed by the Furnisher Defendants; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred in connection with this action.

<u>COUNT V</u>
**Willful Failure to Assure Accuracy of Consumer Information in Credit Report**
**(15 U.S.C. §§ 1681e(b), 1681n)**
*As To The Defendant CRAs*

112.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

113.    "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

114.    The Defendant CRAs each received Plaintiff's Notice of Dispute demonstrating that Plaintiff was the victim of identity theft, and evidence that Plaintiff's credit report contained inaccurate information.

115.    Despite receipt of the foregoing, the Defendant CRAs deliberately failed and refused to undertake a reasonable investigation to ensure the accuracy of reported information concerning Plaintiff's Compromised Accounts.

116.    Although the information Plaintiff provided should have been sufficient to verify that the disputed information in Plaintiff's credit report was inaccurate, the Defendant CRAs failed and refused to properly review it, and further failed and refused to contact Plaintiff or the Furnisher Defendants for any additional information that would assist in a reasonable investigation.

117.    Accordingly, the Defendant CRAs continued producing credit reports for Plaintiff containing inaccurate and damaging credit information, causing Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

118.    The Defendant CRAs' failure to follow reasonable procedures to assure maximum possible accuracy of the information in their reports was malicious, intentional, reckless, and willful.

119.    As a result of the Defendant CRAs' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681n, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs, to defend herself in multiple civil cases that were illegally, unjustifiably, and without cause filed by the Furnisher Defendants; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred in connection with this action.

## COUNT VI
**Negligent Failure to Assure Accuracy of Consumer Information in Credit Report
(15 U.S.C. §§ 1681e(b), 1681o)
*AS TO THE DEFENDANT CRAS***

120.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

121.    Despite receipt of evidence that Plaintiff's credit report contained inaccurate information, the Defendant CRAs failed to establish and follow reasonable procedures to promptly investigate and ensure the accuracy of reported information concerning Plaintiff's Compromised Accounts.

122.    Accordingly, the Defendant CRAs continued producing credit reports for Plaintiff containing inaccurate and damaging credit information, causing Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

123.    As a result of the Defendant CRAs' negligent conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681o, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs, to defend herself in multiple civil cases that were illegally, unjustifiably, and without cause filed by the Furnisher Defendants; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred in connection with this action.

<u>COUNT VII</u>
**Willful Failure to Assure Accuracy of Consumer Information in Credit File
(15 U.S.C. §§ 1681i, 1681n)
*AS TO THE DEFENDANT CRAS***

124.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

125.    "[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . ." 15 U.S.C. § 1681i(a)(1)(A).

126.    This investigation must be completed within thirty (30) days of the CRA's receipt of notice of the dispute.  *See id.*

127.    The CRA must also provide notice of the dispute to any furnisher of the disputed information, within five (5) business days of receipt.

128.    "In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C. § 1681i(a)(4).

129.    Within five (5) business days of completing a reinvestigation, a CRA must provide the consumer with written notice of the results and additional statutory notices.

130.    Upon receipt of Plaintiff's Notice of Dispute, the Defendant CRAs deliberately failed and refused to undertake the required reinvestigation of Plaintiff's credit file, and to ensure the accuracy of reported information concerning Plaintiff's Compromised Accounts.

131.    Although the information Plaintiff provided should have been sufficient to verify that the disputed information in Plaintiff's credit file was inaccurate, the Defendant CRAs failed and refused to properly review it, and further failed and refused to contact Plaintiff for any additional information that would assist in a reasonable investigation.

132.    Upon information and belief, the Defendant CRAs deliberately failed to provide notice of Plaintiff's disputes to the furnishers of the disputed information, as required under 15 U.S.C. § 1681i(a)(2).

133.    Upon information and belief, the Defendant CRAs also failed to provide Plaintiff with written notice of the results of the investigation, or any of the additional required statutory notices, in violation of 15 U.S.C. § 1681i.

134.    The Defendant CRAs further deliberately failed to correct inaccurate and damaging credit information contained in Plaintiff's credit file, causing Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

135.    The Defendant CRAs' failure to follow reasonable procedures to assure maximum possible accuracy of the information in their credit files was malicious, intentional, reckless, and willful.

136.    As a result of the Defendant CRAs' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681n, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs, to defend herself in multiple civil cases that

were illegally, unjustifiably, and without cause filed by the Furnisher Defendants; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred in connection with this action.

## COUNT VIII
### Negligent Failure to Assure Accuracy of Consumer Information in Credit File
### (15 U.S.C. §§ 1681i, 1681o)
### *AS TO THE DEFENDANT CRAS*

137.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

138.    Upon receipt of Plaintiff's Notice of Dispute, the Defendant CRAs had a duty to undertake the required reinvestigation of Plaintiff's credit file, and to ensure the accuracy of reported information concerning Plaintiff's Compromised Accounts.

139.    The Defendant CRAs failed to provide notice of Plaintiff's disputes to the furnishers of the disputed information, as required under 15 U.S.C. § 1681i(a)(2).

140.    The Defendant CRAs failed to investigate Plaintiff's dispute or to properly consider the information Plaintiff submitted in connection with the dispute, and further failed and refused to contact Plaintiff, or the furnishers of the disputed information, for any additional information that would assist in a reasonable investigation.

141.    The Defendant CRAs further failed to correct inaccurate and damaging credit information contained in Plaintiff's credit file, or to provide Plaintiff with written notice of the results and additional required statutory notices, in violation of 15 U.S.C. § 1681i.

142.    The Defendant CRAs' failure to follow reasonable procedures to assure maximum possible accuracy of the information in their credit files, and failure to correct inaccurate and damaging credit information contained in Plaintiff's credit file, has caused Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and

financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

143.    As a result of the Defendant CRAs' negligent conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681o, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs, to defend herself in multiple civil cases that were illegally, unjustifiably, and without cause filed by the Furnisher Defendants; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred in connection with this action.

### VIOLATIONS OF THE FDCPA AND REGULATION F
### (15 U.S.C § 1692, *et seq.* and 12 C.F.R. § 1006.1, *et seq.*)
### AS TO SYNCHRONY AND BARCLAYS

144.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

145.    The FDCPA, codified at 15 U.S.C. § 1692, *et seq.*, was enacted by Congress in 1977 to eliminate abusive debt collection practices, and to promote consistent state action to protect consumers against debt collection abuses.

146.    Regulation F, issued by the CFPB, implements the FDCPA, and is codified at 12 C.F.R. Part 1006.  Regulation F clarifies and expands on the rules that govern debt collectors' practices under the FDCPA.  It provides detailed guidance on how debt collectors must interact with consumers, ensuring transparency and fairness in the debt collection process.

147.    The NY Superintendent of Financial Services has also prescribed regulations applicable to debt collection activities in New York, including substantiation of consumer debts. *See* 23 N.Y.C.R.R. § 1.1, *et seq.*  Specifically, the Superintendent's regulations require a debt collector to inform a consumer who disputes the validity of a charged-off debt, that the consumer

31

may request substantiation of the debt. *See* 23 N.Y.C.R.R. § 1.4(a). Additionally, "[a] debt collector must provide the consumer written substantiation of a charged-off debt within 60 days of receiving a request for substantiation of the debt and must cease collection of the debt until written substantiation has been provided to the consumer." *See* N.Y.C.R.R. § 1.4(b).

148. Plaintiff is a "consumer" as defined by the FDCPA. *See* 15 U.S.C. § 1692a(3).

149. Synchrony and Barclays have each retained "debt collector" agents, as defined by the FDCPA, to engage in debt collection activities on their behalf. *See* 15 U.S.C. § 1692a(6).

150. As agents of Synchrony and Barclays, the actions of these debt collectors in pursuing collection of the debts allegedly owed to Synchrony and Barclays, while acting on their behalf and at their direction, are attributable directly to Synchrony and Barclays.

## COUNT IX
### Collection of Prohibited Fees
### (15 U.S.C § 1692f and 12 C.F.R. § 1006.22)

151. Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

152. The FDCPA prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect a debt." 15 U.S.C. § 1692f.

153. Prohibited debt collection conduct under the FDCPA includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

154. Likewise, Regulation F prohibits the collection of any "interest, fee, charge, or expense incidental to the principal obligation," which is not also "expressly authorized by the agreement creating the debt or permitted by law." *See* 12 C.F.R. § 1006.22(b).

155.    Synchrony and Barclays have falsely attributed responsibility for the fraudulent debts on the Compromised Accounts to Plaintiff, despite evidence demonstrating that Plaintiff was the victim of identity theft and did not make or authorize the disputed charges.  Synchrony and Barclays have deliberately ignored such evidence, and failed and refused to investigate Plaintiff's disputes and claims of identity theft.

156.    The debt collection agents retained by Synchrony and Barclays have sent Plaintiff notices and statements containing debt collection language and demands for payment of the fraudulent, disputed debts, including improper fees, charges, and interest added to those alleged debts.

157.    The debt collection agents retained by Synchrony and Barclays have also filed lawsuits against Plaintiff seeking to collect on the fraudulent, disputed debts, which they have failed and refused to withdraw or discontinue despite notice and knowledge of the identity theft and disputed nature of the debts associated with the Compromised Accounts.

158.    Collection of fraudulent debt resulting from identity theft, and fees, interest, and charges stemming from the accrual of fraudulent debt, is certainly not expressly authorized or even contemplated by the applicable agreements underlying Plaintiff's Compromised Accounts, nor is it permitted by law.

159.    In fact, the collection of, or attempt to collect, any such fraudulent debt and related fees, interest, or other charges is expressly prohibited by the FDCPA, and constitutes "unfair or unconscionable means to collect or attempt to collect a[] debt."  *See* 15 U.S.C. § 1692f; *see also* 12 C.F.R. § 1006.22(b).

160.    The actions of Synchrony, Barclays, and their debt collection agents, and the failure to correct errors in Plaintiff's Compromised Accounts, despite being notified of such errors, have

resulted in the addition of improper and illegal fees, interest, and other charges related to the fraudulent debt, and improper attempts to collect an unauthorized and/or illegal debt; causing Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

161.    As a result of this conduct in violation of § 1692f(1) and 12 C.F.R. § 1006.22(b), Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1692k, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs, to defend herself in multiple civil cases that were illegally, unjustifiably, and without cause filed by the Furnisher Defendants; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred in connection with this action.

## COUNT X
### Use of False, Deceptive, or Misleading Representations
### (15 U.S.C. §§ 1692e, 1692k)

162.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

163.    The FDCPA prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

164.    Examples of prohibited false or misleading representations include: (i) falsely representing the "character, amount, or legal status of any debt" (15 U.S.C. § 1692e(2)(A)); (ii) "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken" (15 U.S.C. § 1692e(5)); (iii) "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to

communicate that a disputed debt is disputed" (15 U.S.C. § 1692e(8)); and (iv) "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt" (15 U.S.C. § 1692e(10)).

165.    Synchrony and Barclays have falsely attributed responsibility for the fraudulent debts on the Compromised Accounts to Plaintiff, despite evidence demonstrating that Plaintiff was the victim of identity theft and did not make or authorize the disputed charges.  Synchrony and Barclays have deliberately ignored such evidence, and failed and refused to investigate Plaintiff's disputes and claims of identity theft.

166.    The debt collection agents retained by Synchrony and Barclays have sent Plaintiff numerous notices and statements containing debt collection language and demands for payment of the fraudulent, disputed debts, and misrepresentations regarding the status of the Compromised Accounts and amounts owed, including that the accounts are delinquent, and that Plaintiff is responsible for payment.

167.    The debt collection agents retained by Synchrony and Barclays have even gone so far as to file lawsuits against Plaintiff seeking to collect on the fraudulent, disputed debts, which they have failed and refused to withdraw or discontinue despite notice and knowledge of the identity theft and disputed nature of the debts associated with the Compromised Accounts.

168.    Plaintiff has repeatedly informed Synchrony and Barclays of the identity theft and account errors, and disputed the alleged debts, but Synchrony and Barclays continue to represent that the Compromised Accounts are delinquent and in "collection/chargeoff" status, and to provide this false delinquency information to credit reporting agencies while also failing to communicate that the debts are disputed.

169.    Upon information and belief, although Plaintiff disputed the validity of the charged-off debts to the debt collection agents of Synchrony and Barclays, they failed to provide written substantiation of the debts within 60 days as required under the NY Superintendent's regulations, and/or failed to cease debt collection activities until such substantiation was provided. *See* 23 N.Y.C.R.R. § 1.4.

170.    Synchrony and Barclays have improperly directed their debt collection agents to continue debt collection activities on the Compromised Accounts, including continuing the pending lawsuits seeking to collect the fraudulent, disputed debts, and additional improper fees, charges, and interest added to those alleged debts.

171.    The actions of Synchrony, Barclays, and their debt collection agents, and the failure to correct errors in Plaintiff's Compromised Accounts, despite being notified of such errors, have also resulted in the addition of improper and illegal fees, interest, and other charges related to the fraudulent debt, thereby further falsely inflating the alleged balances on the accounts; causing Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

172.    As a result of this conduct in violation of the FDCPA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1692k, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs, to defend herself in multiple civil cases that were illegally, unjustifiably, and without cause filed by the Furnisher Defendants; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred in connection with this action.

## COUNT XI
### Use of Unfair or Unconscionable Means to Collect a Debt
### (15 U.S.C. §§ 1692f, 1692k)

173.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

174.    The FDCPA prohibits a det collector from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

175.    Prohibited collection activity includes "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

176.    The debt collection agents retained by Synchrony and Barclays have improperly sought to collect a fraudulent debt from Plaintiff that resulted from identity theft. Synchrony and Barclays have also added improper and illegal fees, interest, and other charges to Plaintiff's Compromised Accounts, thereby further falsely inflating the alleged account balances and amounts owed.

177.    The debt collection agents retained by Synchrony and Barclays have sent Plaintiff statements and other documents containing debt collection language and misrepresentations regarding the status of the account and amounts owed, including the illegal fees, interest, and other charges added to Plaintiff's accounts. They have also commenced lawsuits seeking to collect the fraudulent, disputed debts, and additional improper fees, charges, and interest added to those alleged debts, which they have failed and refused to withdraw or discontinue despite notice and knowledge of the identity theft and disputed nature of the debts associated with the Compromised Accounts.

178.    As a result of the foregoing actions, Plaintiff has suffered damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

179.    As a result of this conduct in violation of the FDCPA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1692k, including: (i) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs, to defend herself in multiple civil cases that were illegally, unjustifiably, and without cause filed by the Furnisher Defendants; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred in connection with this action.

## STATE LAW CLAIMS

## VIOLATIONS OF N.Y. GENERAL BUSINESS LAW

180.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

181.    Sections 374 through 382-b of Article 25 of the New York General Business Law codify New York's Fair Credit Reporting Act.

182.    Plaintiff is a "consumer" within the meaning of the NYFCRA.  *See* GBL § 380-a(b).

183.    Each of the Furnisher Defendants is a "person" within the meaning of the NYFCRA.  *See* GBL § 380-a(a).

184.    Each of the Defendant CRAs is a "consumer reporting agency" within the meaning of the NYFCRA.  *See* GBL § 380-a(e).

<u>**COUNT XII**</u>
**Willful Reporting of Inaccurate Information to Consumer Reporting Agencies**
**(N.Y. Gen. Bus. Law § 380-o)**
*AS TO THE FURNISHER DEFENDANTS*

185.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

186.    The NYFCRA prohibits the knowing and willful introduction, or attempt to introduce, false information into a consumer reporting agency's files.  *See* GBL § 380-o(2). Persons who violate Section 380-o are subject to fines of up to $5,000.00, imprisonment, or both. *See id.*

187.    As a result of the Furnisher Defendants' knowing and willful introduction of false information regarding Plaintiff's account into the files of the consumer credit bureaus, Plaintiff has suffered damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

188.    As a result of the Furnisher Defendants' foregoing conduct in violation of the NYFCRA, Plaintiff has been damaged and is entitled to damages pursuant to GBL § 380-l, including: (i) statutory damages in an amount up to $5,000.00, to be determined by the Court; (ii) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs, to defend herself in multiple civil cases that were illegally, unjustifiably, and without cause filed by the Furnisher Defendants; (iii) punitive damages; and (iv) attorneys' fees and costs incurred in connection with this action, in an amount to be determined by the Court.

**COUNT XIII**
**Failure to Investigate and Resolve Consumer Dispute**
**(N.Y. Gen. Bus. Law §§ 380-f, 380-m)**
*AS TO THE DEFENDANT CRAS*

189.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

190.    Pursuant to GBL § 380-f(a):

If a consumer disputes any item of information contained in his file, and such dispute is directly conveyed to the consumer reporting agency by the consumer, the consumer reporting agency shall promptly re-investigate and record the current status of such information, unless it has reasonable grounds to believe that the dispute by the consumer is frivolous, and it shall promptly notify the consumer of the result of its investigation, its decision on the status of the information and his rights pursuant to this section.

191.    If, after conducting the re-investigation, the CRA can no longer verify an item, or confirms an error, the CRA must, among other things: (i) "promptly expunge the item and otherwise correct the file"; (ii) "refrain from reporting the item in subsequent consumer reports"; and (iii) "clearly and conspicuously disclose to the consumer his rights to make a request for notification." *See* GBL § 380-f(b).

192.    Further, "if any item disputed and reinvestigated is found to be in error or can no longer be verified, upon completion of the reinvestigation of all items disputed, the [CRA] shall promptly mail the consumer a corrected written copy of the file, reflecting any changes, with an explanation of any code used, at no charge to the consumer."  GBL § 380-f(d).

193.    Upon receipt of Plaintiff's Notice of Dispute, the Defendant CRAs were obligated to investigate Plaintiff's claims, notify Plaintiff of the results of the investigation, and fulfill any additional requirements of GBL § 380-f.

194.    The Defendant CRAs failed to undertake any investigation of Plaintiff's dispute, or to review any information provided in connection with the dispute, and likewise failed to revise or correct any of the inaccurate information contained in Plaintiff's credit file.

195.    The Defendant CRAs further failed to notify Plaintiff of the results of their investigation, as no such investigation ever took place.

196.    This conduct has caused Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and lawsuit defense, emotional distress, and other actual damages.

197.    As a result of the Defendants CRAs' foregoing conduct in violation of the NYFCRA, Plaintiff has been damaged and is entitled to damages pursuant to GBL § 380-l, including: (i) statutory damages in an amount up to $5,000.00, to be determined by the Court; (ii) actual damages, including but not limited to damages pertaining to securing attorney representation, and incurring attorneys' fees and costs, to defend herself in multiple civil cases that were illegally, unjustifiably, and without cause filed by the Furnisher Defendants; (iii) punitive damages; and (iv) attorneys' fees and costs incurred in connection with this action, in an amount to be determined by the Court.

198.    The Defendant CRAs are further liable to Plaintiff pursuant to GBL § 380-m, for damages including: (i) actual damages; and (ii) attorneys' fees and costs incurred in connection with this action.

## DEMAND FOR JURY TRIAL

199.    Pursuant to Fed. R. Civ. P. 38, Plaintiff respectfully requests a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff respectfully demands judgment awarding all actual, statutory, and/or punitive damages, recovery of attorneys' fees and costs, and any other relief available pursuant to applicable law.

Dated:  Brooklyn, New York
        October 10, 2024

**PETROFF AMSHEN LLP**
*Attorneys for Plaintiff,*
Paula Deonarine

*/s/ Steven Amshen*
Steven Amshen, Esq. (ID No. SA2569)
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: samshen@petroffamshen.com